1
2
3
4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    BELINDA WINCHESTER,                    Case No. 23-cv-06239-WHO

               Plaintiff,
8
                                            ORDER REVERSING DECISION AND
9          v.                               REMANDING FOR FURTHER
                                            PROCEEDINGS
10   MARTIN J. O'MALLEY,
                                            Re: Dkt. No. 11
               Defendant.
11

12          Plaintiff Belinda Winchester ("Winchester") seeks reversal of the Commissioner's decision

13   concluding that she is not disabled under the Five-Step analysis. After reviewing the parties'

14   briefs and the administrative record, I find that the Administrative Law Judge ("ALJ") erred at

15   Step Two: the conclusion that Winchester's migraines and psychological problems were non-

16   severe is not supported by substantial evidence. As those errors and the ALJ's treatment of the

17   evidence regarding those problems also impacted the weighing of the opinion evidence and the

18   Residual Functional Capacity ("RFC") determination at Step Four, the Commissioner's decision is

19   REVERSED and this matter REMANDED for further proceedings.

20                                    BACKGROUND

21   I.     PROCEDURAL BACKGROUND

22          On March 31, 2020, Winchester applied for disability insurance benefits ("DIB")

23   under Title II of the Social Security Act ("Act"). Administrative Record ("AR") 144-58. She also

24   filed a Title XVI application for supplemental security income at the same time. AR 293-328. In

25   both applications, Winchester alleged disability beginning on January 13, 2016, as a result of a

26   torn rotator cuff, chronic migraines, depression, general anxiety, bulging disks in her neck and

27   lower back, and reactive airway disease. AR 60.

28          The Commissioner denied Winchester's applications initially and upon reconsideration.

AR 91-92, 135-36.  Winchester appeared for a telephonic hearing before an Administrative Law Judge ("ALJ") on July 14, 2022.  AR 38-58.  Following the hearing, the ALJ issued an unfavorable decision on August 3, 2022.  AR 17-31.  Winchester filed a request for review of the hearing on October 3, 2022.  AR 288-90.  The Appeals Council denied Winchester's request for review on October 5, 2023.  AR 1-3.  Winchester appealed the denial to this Court on December 4, 2023.

## II.    FACTUAL BACKGROUND

### A.    Winchester's Personal and Work History

At her alleged disability onset date in 2016, Winchester was 47 years old, placing her in the "younger individual" category (age 18-49).  *See* 20 C.F.R. §§ 404.1563, 416.963; AR 59.  By the time of the ALJ hearing, Winchester was 54-years old, in the "closely approaching advanced age" category.  AR 42.  She holds a high school degree and has very limited college education.  AR 42.  She is unmarried, single, and lives alone.  AR 42.

From 2007 to 2016, Winchester worked as an office clerk at the California Department of Motor Vehicles ("DMV").  AR 43.  She testified that this was the only job she has held in a full-time capacity.  AR 43.  She stated that while working there, she tore her rotator cuff and submitted a Worker's Compensation claim that was denied.  She later resigned from the DMV due to "physical injuries, and there were some accusations made against" her.  AR 45.

From 2019 to 2021, Winchester worked part-time as a warehouse worker for Amazon.  AR 342, 369.  Her responsibilities included assembling orders and stocking items.  AR 46.  She worked five hours per day, two to three days per week.  AR 43.  The heaviest weight she lifted was approximately fifteen pounds.  AR 46.  Her work ended at Amazon after she had neck surgery.  AR 44.

### B.    Winchester's Medical History[1]

#### 1.    Headaches and Migraines History

On January 26, 2016, Winchester complained about chronic migraines at an Emergency

---

[1] Winchester has a long history of physical impairments following a car accident in 2016, a neck surgery in 2020, and has various degenerative physical conditions.  *See* AR 26-27.  Other than

Room visit with Dr. David H. Schneider, the day after her motor vehicle accident. AR 972. During her first appointment with SOMA Orthopedics on January 28, 2016, Winchester stated that she had been experiencing chronic migraines for over 30 years. AR 485-486. From July 21, 2016, to February 7, 2018, she reported a consistent history of migraines to her primary treating physician, Dr. David Chow, at the California Spine Center. AR 531-643.

While receiving treatments at Highland Wellness Adult Medicine Clinic, Alameda Health System, from February 7, 2017, to May 13, 2019, Winchester was prescribed with Zolmitriptan for her migraines. AR 697-817. Records show that she generally took the medication as directed. AR 723 (taking as directed on August 7, 2018), 729 (taking as directed on June 22, 2018), 745 (hasn't been taking on May 3, 2018), 752 (taking as directed on April 16, 2018), 763 (hasn't been taking on April 4, 2018), 768 (taking as directed on March 20, 2018), 780 (taking as directed on March 15, 2017), 795 (taking as directed on February 7, 2017).

On December 2, 2020, during her treatments with her primary treating physician at the Highland Hospital Adult Medicine Clinic, Winchester complained that she experienced three to four headaches per month, each lasting for two days, and sometimes up to a week at their worst. AR 1370. The headaches were typically on the front of the head, behind the right eye, one side only, and she experienced aura which is so bright it hurts her eyes. *Id*. The headaches occurred approximately four times per month and were "improved" in the past by the prescription drug Zomig. *Id*.

From December 2, 2020, to May 18, 2022, during her visits at the Highland Hospital Adult Medicine Clinic, she was prescribed SUMAtriptan (IMITREX) to treat her migraines. AR 1345, 1354, 1357, 1364, 1368, 1372, 1384, 1430, 1450.

In 2021, in her assessment for Alameda Family Services, Winchester reported her chronic migraines began in puberty and seemed to be related to her menstrual cycle. AR 1329, 1331. These records also noted she reported her sensitivity to light and smoke smells as migraine

---

related to the discounting of her subjective testimony – which as explained below is an argument I do not reach – Winchester's physical conditions and limitations are not at issue on this appeal and therefore are not discussed here.

United States District Court
Northern District of California

1    triggers.  AR 1331.

2                    **2.    Psychological Conditions**

3            On September 22, 2016, Winchester was examined by Dr. Ute Kollath, a clinical

4    psychologist,.  AR 521-524.  Kollath performed a "Complete Psychological Evaluation" and a

5    "Folstein Mini Mental State Exam" ("MMSE").  AR 523.  During the visit, Winchester stated that

6    her depression started in 2007 after her mother's death, but denied receiving any psychological or

7    psychiatric care.  AR 521.  Winchester also reported that housing, including a period of

8    homelessness, economic hardship, and physical limitations contributed to her symptoms of

9    depression.  AR 521-522.  Kollath diagnosed Winchester with an unspecified depressive disorder.

10   AR 523.  Winchester's performance on mental status was "unimpaired" and Kollath opined that

11   Winchester should have "no functional disruption due to a cognitive disorder" and no work-related

12   impairments.  AR 523-24.

13           From February 7, 2017, through May 13, 2019, during her visits at Highland Wellness

14   Adult Medicine Clinic, Alameda Health System, Winchester was diagnosed and treated for

15   depression.  AR 697-817; *see also* AR 722, 744, 761 (behavioral health services notes from April

16   2018 to May 2018).  On August 7, 2018, Winchester reported that behavioral health had been

17   helpful to her and she was not ready to try "pharmacological therapy" at that time.  AR 722.  On

18   May 13, 2019, the results of her patient health questionnaire were "moderately severe" and the

19   diagnosis was "Consider Major Depressive Disorder."  AR 705.

20           On July 9, 2019, Winchester was evaluated by licensed psychologist, Jeremy Blank, at the

21   Bay View Medical Clinic.  AR 825-29.  She was diagnosed with mild post-traumatic stress

22   disorder ("PTSD") and unspecified depressive disorder based on a Complete Psychological

23   Evaluation and the result of the MMSE.  AR 828.  Blank  opined that Winchester was mildly to

24   moderately impaired emotionally and functionally, and mild to moderately impaired for work-

25   related abilities.[2]  AR 828-829.

26   _____

27   [2] The report indicated that Winchester's "ability to follow simple instructions" was unimpaired;
     "ability to follow complex/detailed instructions" was mildly impaired; "ability to maintain
28   adequate pace or persistence to perform" with "complex tasks" was mildly impaired; "ability to
     maintain adequate attention/concentration" was mildly to moderately impaired; "ability to adapt to

United States District Court
Northern District of California

4

United States District Court
Northern District of California

On September 14, 2020, Winchester was evaluated by Dr. Katherine Wiebe, a licensed psychologist. AR 912-928. In the report, Winchester stated that she was "in psychotherapy for depression and anxiety in 2017 or 2018 for about a year, at Highland Hospital, outpatient; and that it was 'a little helpful.'" AR 914. She reported that "her doctor recently suggested that she take antidepressant medication." AR 914. Wiebe diagnosed Winchester with major depressive disorder, severe with anxious distress; with PTSD; with "other specified personality disorder with paranoid personality traits, avoidant personality traits, compulsive personality traits, and Schizoid personality features"; and "unspecified neurocognitive disorder." AR 923. Wiebe found that Winchester's overall functioning in attention/concentration was "severely impaired"; "overall mildly to moderately impaired functioning on tasks," "which entails the ability to plan, sequence, abstract and organize"; "overall moderately to severely impaired abilities" in "memory functioning"; "mildly impaired" functioning in language abilities; "moderately to severely impaired" visual/spatial abilities; and moderate impairment in sensory/motor abilities. AR 915-16.

On January 12, 2021, Winchester was assessed at Alameda Family Services by Doctor of Psychology ("PsyD") Trainee Andrea Marroquin, under the supervision of PsyD Sarah Bharier. AR 1328-1341. During the assessment, Winchester "attribute[ed] depressive symptoms to lack of access to financial resources, inability to take care of herself financially, lack of personal space and inability to engage in former hobbies due to physical restrictions of her chronic pain/injuries." AR 1329. Winchester "report[ed] that she has difficulty concentrating, difficulty sleeping, experiences anhedonia, self-isolates, cries, and feels hopeless and anxious over her current situation." AR 1329. Additionally, Winchester "report[ed] that prior to her financial and physical stressors she was very active in martial arts, worked full-time and was able to financially support herself, and was able to help support other family members emotionally and financially." AR 1330. She was diagnosed with "F32.1 – Major depressive disorder, single, moderate." AR 1328.

---

changes in job routine" was mildly to moderately impaired; "ability to interact appropriately with co-workers, supervisors, and the public on a regular basis" was mildly impaired; "ability to adapt to changes, hazards, or stressors in workplace setting" was mildly to moderately impaired; and that Winchester was "able to manage her funds." AR 828-29.

1    The assessment indicated a "significant impairment in an important area of life function," and

2    included a referral for therapy.  AR 1335-36.

3         Winchester's reports in 2021 and 2022 from Highland Hospital Adult Medicine Clinic

4    indicated persistent diagnoses with depression and anxiety, but little evidence of treatment.  AR

5    1357, 1378, 1465, 1479, 1482, 1487.

6              **3.    Winchester's Testimony Concerning Her Symptoms**

7         At the July 2022 ALJ hearing, Winchester testified that she has migraines or headaches

8    "two or three times a month."  AR 50.  She described the pain as "very painful on the side of the

9    head," making it "[d]ifficult to concentrate, difficult to read."  AR 50.  When she gets migraines,

10   they often last for "[s]ix or more hours at a time," and occasionally to a couple of days.  AR 50.

11   During those days, she is unable to do much of anything because walking around makes her dizzy

12   and nauseous, and too much light exasperates more pain.  AR 51.

13        Winchester also testified that she has a low energy level and difficulty in completing things

14   such as cooking, painting, or playing instruments, the things that she used to enjoy doing.  AR 48-

15   49.  She experiences daily feelings of guilt or worthlessness.  AR 49.  Although she has received

16   treatment for her mental health symptoms and depression, she testified that it had been minimally

17   helpful and she was not receiving treatment at the time of the hearing due to limitations on the

18   amount of treatment she could get.  AR 50.

19   **III.    ALJ'S DECISION**

20        In a decision dated August 3, 2022, the ALJ followed the five-step sequential analysis and

21   found Winchester not disabled.  AR 17-31.

22        At Step One, the ALJ found that Winchester's part-time work from 2018 to 2020 did not

23   constitute "substantial gainful activity," since her January 13, 2016, alleged onset date.  AR 20.

24        At Step Two, the ALJ concluded that Winchester had the following severe impairments:

25   cervical degenerative disc disease, right shoulder degenerative joint disease, bilateral knee

26   osteoarthritis, reactive airway disease, and obesity.  AR 20.  The ALJ found "all remaining

27   impairments in the record" including Winchester's migraines and mental impairments, to be "non-

28   severe."  AR 20.  With respect to Winchester's migraines, the ALJ acknowledged that while

United States District Court
Northern District of California

6

Winchester reported a 30-year history of severe headaches, the "weight of the evidence" did not support "significant functional limitations related to" headaches given "infrequent and unremarkable medical treatment" for her headaches and the lack of "objective medical abnormalities tied to the claimant's migraine" complaints. AR 20. "Based on the relative lack of objective medical support and migraine-targeted treatment," the ALJ found that the "medical evidence is inconsistent" with Winchester's assertion of "severe, debilitating symptoms." AR 20-21.

The ALJ also determined that Winchester's psychological impairments were not severe. AR 21-24. The ALJ explained that although there is medically detectable evidence that Winchester suffers from psychological impairments, the "balance" of the evidence "in terms of reported symptoms, clinical signs, and diagnostic and treatment history" is "inconsistent with more than minimal work-related functional limitations." AR 21.

The ALJ discussed the consultative examiner reports from 2016 and 2019 (Kollath and Blank), noting the examiners found mostly "mild" "symptoms, signs, diagnoses, and prognoses." AR 21. The ALJ discounted the more significant abnormalities and severe impairments found in the 2020 report by Wiebe based on the ALJ's view that Wiebe's comments that were "suggestive of exaggeration" by Winchester. Based on that unstated "suggestion," the ALJ determined Wiebe's report "indicates" Winchester's mental functioning is "less severely impacted" by her psychological disorders. AR 21. In sum, the ALJ determined that "the claimant's testimony and lack of treatment is more consistent with mild functional limitations than with the asserted severity," particularly when considered with her testimony regarding her ability to perform activities of daily living. AR 21-22.

In determining Winchester's psychological impairments non-severe, the ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders. AR 22 (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself). The ALJ found that Winchester has only a mild limitation in all four areas, discounting Wiebe's more significant limitations in 2020 as based on "exaggerated" symptoms and relying on the mild limitations found

by Kollath in 2016 and Blank in 2019.  AR 22-23.  The ALJ also relied on Winchester's "independent living situation" and the "lack of mental health treatment" as inconsistent with moderate or more severe limitations in any of the functional areas.  AR 22-23.

The ALJ gave great weight to Kollath's 2016 opinions, and discounted later opinions that found more restrictions, because Kollath's prior "conclusions were borne out in the evidence on the treatment course, activities of daily living, and overlap of depressive symptoms and past work."  AR 23.  The ALJ discounted the moderate limitations found in Blank's 2019 consultative psychological examinations as "unpersuasive" because "Dr. Blank's conclusion that the claimant has more than minimal functional limitations related to her mental impairments is unsupported by his own interview and examination."  AR 24.  The ALJ also noted that Winchester's "description of ongoing work activity, which she characterized as 'difficult on her body,' her report of independence in instrumental activities of daily living, and signs such as normal MMSE and only 'slightly depressed' mood suggest more intact functional abilities than Dr. Blank found."  AR 24.

Finally, the ALJ also discounted Wiebe's 2020 psychological consultative examination in 2020, again concluding that Wiebe's conclusions were "somewhat undermined by the finding that [Winchester's] symptoms were exaggerated at that encounter."  AR 21.  Therefore, the ALJ determined that Wiebe's conclusion was not supported by her own interview as "it does not account for evidence of symptom exaggeration in the formal inventories, the claimant's independence in activities of daily living, the claimant's attribution of her difficulties to her physical impairments, and the relatively unremarkable treatment history for mental impairments."  AR 24.  Additionally, the ALJ found Wiebe's more severe assessment to be inconsistent with the "two earlier consultative examinations, the claimant's part-time work and other activities of daily living during the period at issue, and the lack of treatment for mental impairments."  AR 24.

At Step Three, the ALJ found that Winchester's severe impairments did not meet or equal the criteria in the Listing of Impairment, 20 C.F.R. Part 303, subpart P, Appendix 1.  AR 24-25.

At Step Four, the ALJ found Winchester retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional restrictions:

She can occasionally climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. She can only occasionally reach overhead with the right upper extremity. She must avoid frequent exposure to non-weather-related cold temperatures and to excessive vibrations, such as a shaking object or surface.

AR 25.  The ALJ found that Winchester's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and that "significant work-related limitations are supported" by the medical evidence.  AR 26.  However, the ALJ concluded that "[Winchester's] statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record."  *Id*.  Therefore, the ALJ found that the evidence was more consistent with an RFC determination restricting Winchester to light work, as opposed to sedentary work or an inability to attend to a full-time work.  AR 27.

At Step Five, the ALJ found that Winchester was capable of performing past relevant work as a clerk, and that this work did not require activities precluded by Winchester's RFC.  AR 29-30.  In addition to past relevant work, the ALJ also found that there are other jobs in the national economy that Winchester could perform, considering her age, education, work experience, and RFC, such as mail room clerk (DOT code 209.687-026; light; SVP 2; 106,300 jobs in the national economy) and packer (DOT code 559.687-074; light; SVP 2; 100,000 jobs in the national economy).  AR 30.

As a result, the ALJ concluded that Winchester "has not been under a disability, as defined in the Social Security Act, from January 13, 2016, through the date of this decision (20 CFR 404.1520(f) and 416. 920(f))."  AR 31.  The Appeals Council denied Winchester's request for review on October 5, 2023.  AR 1.  Winchester appealed the denial before this Court on December 4, 2023.

## LEGAL STANDARD

### I.      STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  *Smolen v. Chater*,

80 F.3d 1273, 1279 (9th Cir.1996); *see also DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991) ("We review the ALJ's determination ... to determine whether it was supported by substantial evidence and whether it was based on the proper legal standard."). Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." *See Saelee v. Chater*, 94 F.3d 520, 521–22 (9th Cir. 1996) (internal quotations and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389 (1971) (internal quotations and citation omitted). A court must review the record as a whole and consider adverse as well as supporting evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *See Morgan v. Comm'r of the Soc.  Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *See Robbins*, 466 F.3d at 882 (internal quotations and citation omitted); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). If the legal error is harmless, then a reversal is unwarranted. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We may not reverse an ALJ's decision on account of an error that is harmless."). An error is harmless when it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (internal quotations and citation omitted).

## II.    DISABILITY DETERMINATION

A claimant is "disabled" as defined by the Social Security Act if: (i) "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (ii) the impairment is "of such severity that he not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)–(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). To determine whether a claimant is disabled, an ALJ engages in a five-step sequential analysis as required under 20 C.F.R § 404.1520(a)(4)(i)–(v).

United States District Court
Northern District of California

In the first two steps of the evaluation, the ALJ must determine whether (i) the claimant is not performing substantial gainful activity, and (ii) is under a "severe" impairment. Id. § 416.920(a)(4)(i)–(ii). An impairment must have lasted or be expected to last 12 months in order to be considered severe. *Id.* § 404.1509. In the third step, the ALJ must determine whether the impairment meets or medically equals a listed impairment described in the administrative regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment does not meet or equal one of the listed impairments, before proceeding to the fourth step, the ALJ has to make a residual functional capacity determination based on all the evidence in the record; this determination is used to evaluate the claimant's work capacity for steps four and five. Id. § 416.920(e). In step four, the ALJ must determine whether the claimant is capable of performing his or her previous job. *Id.* § 416.920(a)(4)(iv). The claimant bears the burden to prove steps one through four, as "[a]t all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

Once the claimant has established a prima facie case, the burden shifts to the Commissioner to show at the fifth step that the claimant is able to do other work, and that there are significant number of jobs in the national economy that the claimant can do. *Parra*, 481 F.3d at 746; 20 C.F.R. §§ 416.920(a)(4)(v), (g); 416.960(c). There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (i) by the testimony of avocational expert or (ii) by reference to the Medical–Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the Commissioner meets the burden at step five, the claimant is not disabled. *Tacket*, 180 F.3d at 1099; 20 C.F.R. § 404.1520(f).

## DISCUSSION

Winchester argues that the ALJ erred in five ways: first, finding Winchester's migraines non-severe at Step Two; second, finding Winchester's psychological impairments non-severe at Step Two; third, erroneously assessing the persuasiveness of the medical opinions of Wiebe, Blank, and Kollath; fourth, by improperly rejecting Winchester's subjective testimony; and fifth, failing to properly consider all of Winchester's impairments in the RFC determination. Plaintiff's

11

1    Motion to Reverse and Remand (Pl.'s Mot."), Dkt. No. 11.  Winchester asks that I reverse the

2    decision of the ALJ and remand for payment of benefits or, in the alternative, for further

3    proceedings.  Pl.'s Mot. at 20:8-26.  As discussed below, because the errors at Step Two impacted

4    both the weighing of medical opinion evidence and the RFC determination, I grant plaintiff's

5    motion to remand and remand for further proceedings.

6        At Step Two of the five-step sequential inquiry, the Commissioner determines whether the

7    claimant has "a medically severe impairment or combination of impairments."  *Smolen v. Chater*,

8    80 F.3d 1273, 1290.  The Social Security Regulations and Rulings, as well as case law applying

9    them, discuss the step two severity determination in terms of what is "not severe."  According to

10   the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the

11   claimant's] physical ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 404.1521(a)

12   (2024).  Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for

13   example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  20

14   C.F.R. § 140.1521(b); Social Security Ruling 85–28 ("SSR 85–28").

15       "Important here, at the step two inquiry, is the requirement that the ALJ must consider the

16   combined effect of all of the claimant's impairments on her ability to function, without regard to

17   whether each alone was sufficiently severe."  *Smolen*, 80 F.3d at 1290.  The ALJ is also "required

18   to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity."

19   *Id*.  "Finally, as the Supreme Court has recognized, the Step-Two inquiry is a 'de minimis'

20   screening device meant to dispose of groundless claims."  *Id*. (citing *Bowen v. Yuckert*, 482 U.S.

21   137, 153–54 (1987)).  "An impairment or combination of impairments can be found 'not severe'

22   only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an

23   individuals ability to work.'"  *Id*.

24   **I.    THE ALJ ERRED IN FINDING MS. WINCHESTER'S MIGRAINES NON-
         SEVERE**

25       Winchester argues that the ALJ erred in finding Winchester's migraines are non-severe at

26   Step Two, despite evidence that Winchester's migraines occur multiple times per month and are

27   not fully controlled by her compliant use of medications.  *See* Pl.'s Mot. at 9.  As a result, she

28

1    contends the ALJ's "failure to find Ms. Winchester's migraines severe at step two was not

2    supported by substantial evidence." *Id.* The Commissioner argues that the ALJ's non-severe

3    determination is supported by the ALJ's consideration of the medical evidence concerning

4    Winchester's headache disorder and that the ALJ appropriately concluded the objective medical

5    evidence and treatment records did not support a finding of a severe headache impairment.

6    Defendant's Motion ("Def.'s Mot."), Dkt. No. 15, at 8.

7        In finding Winchester's migraines non-severe, the ALJ reasoned that the record showed

8    that Winchester's primary complaints and related functional limitations were based on her

9    musculoskeletal impairments and there was a "relative lack of objective medical support and

10   migraine-targeted treatment" other than some "infrequent and unremarkable treatment." AR 20-

11   21. That was error under the "de minimis" Step Two analysis, given the extensive evidence of

12   Winchester's diagnoses and treatment for migraines. That treatment record for migraines –

13   showing persistent complaints, changes in medication, and general adherence to medication with

14   ongoing complaints – is substantial evidence that the migraines have a more than a "minimal

15   effect" on her ability to work. *See, e.g.*, Soc. Sec. Ruling, SSR 19-4p; Titles II & Xvi: Evaluating

16   Cases Involving Primary Headache Disorders, SSR 19-4P 2019 WL 4169635 (S.S.A. Aug. 26,

17   2019) ("When evidence in the file from an AMS documents ongoing headaches that persist despite

18   treatment, such findings may constitute medical signs that help to establish the presence of an

19   MDI.").

20       Winchester specifically complained about headaches and migraines throughout her

21   medical visits from 2016 to 2022. *See* AR 486 (complaints in January 2016 about chronic and

22   persistent migraines); AR 931(December 2020 "chief complaint" of migraines, having three to

23   four per month, each lasting for two days and sometimes up to a week); AR 1331(records from

24   2021 indicating Winchester had chronic migraines, with sensitivity to light and smoke smells as

25   migraine triggers). The medical record also shows that Winchester sought treatment for her

26   migraines and generally took the medicines prescribed for them. AR 723, 726 (August 2018,

27   prescribed with Zolmitriptan, taking as directed; AR 729 (taking as directed June 2018); AR745

28   (not taking May 2018); AR 752 (taking as directed April 2018); AR768 (taking as directed March

United States District Court
Northern District of California

1    2018); AR 780 (taking as directed March 2017); AR 795 (taking as directed February 7, 2017).  In

2    one visit in 2016, Winchester notes that the prescribed medication helped her migraines, but that

3    she tried to avoid taking it as much as possible due to side effects, including nausea.  AR 486.  In

4    December 2020, Winchester's doctor prescribed SUMAtriptan (IMITREX) to treat Winchester's

5    migraines through 2022. *See* AR 1370-71, 1345, 1354, 1357, 1364, 1368, 1372, 1385, 1430, 1450.

6    In her July 2022 hearing, Winchester testified that she had two or three migraines per month that

7    caused pain, dizziness, nausea, sensitivity to light, and difficulty concentrating.  AR 50-51.

8         The Commissioner argues that the evidence shows any impairments from the migraines

9    were "controlled effectively with medication [and therefore] are not disabling.'"  *Warre v.*

10   *Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2005); Def. Mot. at 6.  However, at

11   Step Two the question is not whether the impairments were by themselves or in conjunction with

12   other symptoms disabling.  The question is whether the migraines by themselves or in conjunction

13   with other symptoms were significantly limiting, meaning they had more than a de minimis impact

14   on Winchester's ability to work.[3]  The fact that her migraines may have been helped by

15   medication does not end the analysis, because the record shows that Winchester continued to

16   complain of the headaches despite being largely compliant with medication, and that her doctors

17   were prescribing new medicines in an effort to treat the migraines.  *See* Soc. Sec. Ruling, SSR 19-

18   4p 2019 WL 4169635 ("When evidence in the file from an AMS documents ongoing headaches

19   that persist despite treatment, such findings may constitute medical signs that help to establish the

20   presence of an [medically determinable impairment].").

21        By failing to find Winchester's migraine condition severe, the ALJ failed to consider how

22   the migraine symptoms interacted with her other conditions and symptoms.  *See Smolen*, 80 F.3d

23   at 1290 ("Having found Smolen to suffer from only one "severe" impairment at step two, the ALJ

24

25

26   _____

     [3] In *Warre*, the minor claimant's symptoms had improved sufficiently so that they were not
27   disabling.  *Warre*, 439 F.3d at 1006 ("The key question is not whether the claimant still suffered
     from the same medical problem he had when benefits were awarded, but whether the severity of
28   the problem had decreased sufficiently to enable him to engage in gainful activity.").  The court
     did not address a severity determination at Step Two.

United States District Court
Northern District of California

necessarily failed to consider at step five how the combination of her other impairments—and resulting incapacitating fatigue—affected her residual functional capacity to perform work.").

In sum, the medical records show consistent complaints of migraines and treatment of migraines, including changes in medicines to attempt to control the condition. The ALJ's conclusion that the record showed only infrequent treatment for migraines was not based on substantial evidence. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Instead, the record shows Winchester consistently complaining about her history of migraines, current descriptions about the frequency and duration of the migraines, and consistent provision of medicines to attempt to treat the migraines. The ALJ erred in not finding Winchester's migraines severe at Step Two. *See Webb,* 433 F.3d at 688 ("But there is no inconsistency between Webb's complaints and his doctors' diagnoses sufficient to doom his claim as groundless under the de minimis standard of step two. Webb's clinical records did not merely record the complaints he made to his physicians, nor did his physicians dismiss Webb's complaints as altogether unfounded. To the contrary, the doctors' reports and test results usually corresponded with the afflictions Webb perceived.").

## II.    THE ALJ ERRED IN FINDING MS. WINCHESTER'S PSYCHOLOGICAL IMPAIRMENTS NON-SEVERE

Winchester also argues that the ALJ erred in finding that Winchester's psychological impairments – "medically determinable mental impairments of depressive, personality, [] neurocognitive disorders and posttraumatic stress disorder (PTSD)" – non-severe at Step Two because those impairments imposed no "more than minimal work-related functional limitations." Pl.'s Mot. at 10; AR 21. In reaching that conclusion, the ALJ relied on Winchester's lack of treatment for mental conditions, her ability to work for periods of time despite the impairments, her largely normal daily activities, and the contradiction between her statements about her reason for not working – related to her physical impairments – as opposed to her allegation that her psychological impairments are severe. *See* AR 21-24. The ALJ also discounted the medical opinion evidence of consultative examiners Wiebe (2020) and Blank (2019), considering and finding more than mild mental health limitations, in favor of the opinions of consultative examiner

15

1    Kollath from 2016, who found only mild mental health limitations.  AR 21.  The primary reason

2    that the ALJ discounted Wiebe's more significant findings was the ALJ's interpretation that one of

3    Wiebe's comments was "suggestive of [Winchester's] exaggeration of her emotional problems,"

4    indicating that claimant's functioning "is less severely impacted by her psychological disorders

5    than the exam findings may otherwise imply."  AR 21.  These determinations are not supported by

6    substantial evidence.

7        First, starting in 2018 the record shows significant and fairly consistent diagnoses of

8    depression, PTSD, and other mental health disorders.  *See* AR 1157, 1171-72, 1189-90, 1204-06,

9    1242-43 (Highland Hospital Adult Medicine Clinic questionnaire responses from 2017 through

10    2020 indicating "Consider Major Depressive Disorder").  Consultative examiners in 2019 and

11    2020 both diagnosed Winchester with Depressive Disorder and PTSD.  AR 828, 923.

12        In discounting severity of her mental health limitations, the ALJ relied on Winchester's

13    failure to seek significant mental health treatment but failed to consider whether that lack of

14    treatment was a function of Winchester's mental health impairments themselves.  *See Nguyen v.*

15    *Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("'it is a questionable practice to chastise one with a

16    mental impairment for the exercise of poor judgment in seeking rehabilitation.'" (quoting

17    *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)); *see also* Soc. Sec. Ruling 16-3p

18    Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P 2017 WL 5180304

19    (S.S.A. Oct. 25, 2017 ("We will not find an individual's symptoms inconsistent with the evidence

20    in the record on this basis without considering possible reasons he or she may not comply with

21    treatment or seek treatment consistent with the degree of his or her complaints.").  In fact,

22    consultative examiner Wiebe expressly recognized that therapy may not be "well-received" by

23    Winchester given her other symptoms.  AR 919.[4]

24        Second, in order to discount the medical opinion evidence of Wiebe and Blank that

25    Winchester's mental health symptoms imposed more than mild limitations on her ability to work,

26

27    _____

[4] Winchester testified during the ALJ hearing that did seek services for her mental health
conditions, particularly psychotherapy in 2017 and 2018, but the amount of services she was able
28    to secure were limited.  AR 50; *see also* AR 914.

the ALJ focused almost exclusively on the "suggestion" from Wiebe's report that Winchester's responses in the MCMI-IV test "suggests a moderate tendency towards self-depreciation and a possible consequent exaggeration of current emotional problems.  On the basis of the test data, it may be assumed that she is experiencing a severe mental disorder." AR 919; *see also* AR 21, 22, 24.  However, neither Wiebe nor the ALJ made an affirmative determination that Winchester was malingering.  More fundamentally, the ALJ did not consider or seek additional opinion evidence to determine whether Winchester's possible exaggeration, accompanied by her impaired insight and reasoning (as found by Wiebe), was itself a symptom of her psychiatric conditions that explains why Winchester had not sought more treatment.

The ALJ's conclusion that Winchester's mental health conditions were not severe at Step Two is not supported by substantial evidence.

## III.  REMAND

As in *Smolen*, given the multiple errors at Step Two, remand is appropriate so that the ALJ can consider: (1) the effectiveness of Winchester's migraine treatments, any demonstrated side effects, and whether and if so how to account for limitations from Winchester's migraines in formulating Winchester's RFC; and (2) how the suggestion of "exaggeration" may be part of or separate from Winchester's underlying mental health conditions, perhaps obtaining further medical opinion to appropriately weigh Wiebe's opinions and limitations, and then redetermine whether the evidence shows mild, moderate or significant limitations on Winchester's ability to work as a result of her mental health conditions.  *See Smolen*, 80 F.3d at 1290.  The failure to do that impacted both the ALJ's weighing of opinion evidence and the RFC determination.[5]

Remand for further proceedings is appropriate. *Taylor v. Commissioner of Social Sec.*

[5] Winchester separately argues that the ALJ erred in discounting Wiebe's opinions and limitations based primarily on the "suggestion of exaggeration," but also on insufficiently explained reliance on Winchester's limited daily life activities and history of work.  Pl. Mot. at 14; Reply at 6.  I agree that the ALJ did not provide substantial evidence to support discounting Wiebe's findings based on the "suggestion" without either an express finding of malingering or further consideration of whether any exaggeration is itself a symptom of the diagnosed mental health conditions.  Given the remand on the grounds identified, I will not address one way of the other Winchester's remaining arguments regarding errors, including whether the ALJ gave undue weight to Kollath's 2016 report and inappropriately  discounted Winchester's subjective testimony.

1    *Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("Remand for further proceedings is appropriate

2    where there are outstanding issues that must be resolved before a disability determination can be

3    made, and it is not clear from the record that the ALJ would be required to find the claimant

4    disabled if all the evidence were properly evaluated.").

5        **IT IS SO ORDERED.**

6    Dated: January 13, 2025



William H. Orrick
United States District Judge